IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SIGNIFY NORTH AMERICA CORPORATION and
SIGNIFY HOLDING B.V.,

                              Plaintiffs,

          v.

MENARD, INC.,

                              Defendant,

          v.                                              OPINION and ORDER

LUMINEX INTERNATIONAL COMPANY, LTD.,                      22-cv-706-jdp
AMERICAN LIGHTING, INC., RICHPOWER
INDUSTRIES, INC., EAST WEST COMMERCE CO.,
INC., AFX, INC., ALERT REEL MANUFACTURING,
LLC, BEST LIGHTING PRODUCTS, INC., K LIVE
D/B/A BULB STAR, CL CORPORATION D/B/A
PINEGREEN LIGHTING, GOOD EARTH
LIGHTING, INC., GT INDUSTRIAL PRODUCTS,
L.L.C., SOARING TECHNOLOGY CO., LTD, and
ZONE INDUSTRY CORPORATION,

                              Third-party defendants.

---

        Plaintiffs Signify North America Corporation and Signify Holding B.V. (collectively

"Signify") are suing defendant Menard, Inc. for selling more than 100 different lighting

products that infringe six patents related to LED lighting. In response, Menard has filed third-

party complaints against more than a dozen companies that manufacture the accused products,

contending that the third parties are contractually obligated to indemnify Menard for any

infringement. For their part, four of the third-party defendants have asserted claims against

Signify, seeking declaratory relief for noninfringement and invalidity.

Seven motions are before the court that fall into three groups: (1) Signify's motion to sever all the third-party claims, Dkt. 100; (2) motions by two third-party defendants to dismiss some of Menard's claims in the third-party complaints, Dkt 104 and Dkt. 115; and (3) Signify's motions to dismiss the third-party defendants' claims for declaratory relief and to strike their affirmative defenses, Dkt. 129; Dkt. 154; Dkt. 155; Dkt. 163. For the reasons explained below, the court will resolve the motions as follows: Signify's motion to sever will be denied; Soaring Technology Co.'s motion to dismiss will be denied; American Lighting, Inc's motion to dismiss will be granted; and Signify's motions to dismiss the third-party defendants' claims and strike their affirmative defenses will be granted in part and denied in part.

## ANALYSIS

### A.  Motion to sever

Signify's motion to sever Menard's claims against the third-party defendants relies on two Federal Rules of Civil Procedure. Rules 14(a)(4) allows the court to "strike the third-party claim, sever it, or to try it separately." Rule 21 allows the court to "sever any claim against a party." A decision under either rule is discretionary and governed by considerations of judicial economy and fairness to all parties involved. *See Gaffney v. Riverboat Services of Indiana, Inc.*, 451 F.3d 424, 442 (7th Cir. 2006); Fed. R. Civ. P. 14(a)(4) advisory committee's notes to the 1963 amendments.[1]

---

[1] Signify also cites cases stating that the merits of the third-party claim are relevant to a Rule 14(a)(4) analysis, but that is in the context of a motion to *strike* a third-party claim, which courts have construed as equivalent to a motion to dismiss for failure to state a claim. *See, e.g.*, *Dobrov v. Hi-Tech Paintless Dent Repair, Inc.*, No. 20-cv-314, 2021 WL 1212796, at *6 (N.D. Ill. Mar. 31, 2021); *Dowdy v. Suliman*, No. 18-cv-17402021, WL 514227, at *2 (S.D. Ill. Feb. 11, 2021) (citing 6 Charles Alan Wright et al., *Federal Practice & Procedure* § 1460 (3d ed.)).

The court will deny the motion to sever. Rule 14(a)(1) allows a defendant to join "a nonparty who is or may be liable to it for all or part of the claim against it." It's undisputed that all of Menard's third-party claims meet that standard because Menard is alleging that it has agreements with each of the third-party defendants that require them to indemnify Menard for any infringement claims involving the products they manufacture for Menard.

Signify's primary argument for severance is that Menard's third-party claims will add more complexity to the case and interfere with Signify's litigation strategy of focusing on Menard rather than its various suppliers. New claims and defendants always have the potential to create more complexity, so accepting this argument would mean that the court would have to sever all third-party claims, which would be inconsistent with Rule 14. The court must weigh all the costs and benefits of allowing joinder; the court cannot resolve the motion only on Signify's preferences.

The court concludes that joinder of the third-party claims is appropriate for three reasons. First, the manufacturers will be involved in this case regardless of whether they are parties. To prove direct infringement against Menard, Signify will first have to prove that the accused products meet all limitations of one or more claims. As the designers and manufacturers of the products, it is likely that the third-party defendants possess much of the relevant discovery and that some of the witnesses who need to be deposed are the employees of the third-party defendants. So some of the procedural complexity that Signify is concerned about is unavoidable. Including the manufacturers as parties could actually simplify some issues by facilitating cooperation.

---

Signify isn't asking to strike or dismiss the third-party claims, so the court won't consider the merits of the claims for the purpose of Signify's motion to sever.

Second, each of the third-party defendants has a strong interest in the result of this case. As will be discussed in the context of Signify's motions to dismiss, if Menard is found liable for infringement, it follows that the manufacturers of the accused products are also liable. For this reason, four of the third-party defendants have asserted claims against Signify, seeking declarations of noninfringement and invalidity. Signify states repeatedly throughout its briefs that it is not suing the third-party defendants for infringement, and it has not threatened to sue them. But Signify also has not provided any of them with a covenant not to sue, so the implicit threat is clear. A finding that the accused products infringe Signify's patents or that the patents aren't invalid would adversely affect the third-party defendants' legal interests.

The third reason for denying Signify's motion to sever is that Menard contends not just that the third-party defendants have the duty indemnify Menard but also that they have the duty to defend Menard in this case. As in any case involving potential insurance coverage, any dispute about that issue will have to be resolved regardless of whether Signify prevails on its claim, and that dispute is generally decided before liability.

Signify contends that manufacturers who wish to protect their interests may choose one of three options: (1) work behind the scenes with Menard to assert their views; (2) take over Menard's defense themselves; or (3) file a motion to intervene after Menard's claims are severed. The court isn't persuaded that any of these proposals would serve judicial economy or fairly balance the interests of all parties involved.

As for the first proposal, subordinating the third-party defendants to behind-the-scenes advisors would leave them at the mercy of Menard, potentially creating chaos and confusion when the nonparties' positions don't align with Menard's. As for the proposal of the third-party defendants taking over Menard's defense, it could lead to Menard being represented by more

than a dozen sets of lawyers, leading to the same procedural complexity that Signify is concerned about now but without the benefit of resolving all disputes in one lawsuit. As for the suggestion that the third-party defendants could file a motion to intervene, it would waste time and resources to sever claims only to allow them to be reasserted through another procedural device. That would defeat the central purpose of severing the claims in the first place.

The court understands why Signify chose to sue Menard rather than each of the manufacturers: it is more efficient to sue one defendant than a dozen. And the court is sensitive to Signify's concerns about the case becoming unmanageable. All things being equal, as the number of parties in a case increases, so too does the risk that disputes or delays could derail the case. But there are other ways of maintaining order and protecting Signify's interests without creating satellite litigation or encouraging a round of motions to intervene.

First, to prevent issues about indemnification from overwhelming other issues, the court will stay discovery and all other proceedings about indemnification until liability is determined on Signify's claims. After all, if Signify's claims fail, there will be no need to indemnify Menard. This ruling does not apply to any disputes about the third-party defendants' duty to defend.

Second, the court expects Menard and the third-party defendants to coordinate a litigation strategy, acting as a united front whenever possible. For example, Menard and the third-party defendants should designate which party will take the lead for taking or defending a deposition, for filing a motion, or for preparing a brief. Menard and the third-party defendants should not question witnesses separately or file separate motions or briefs unless it is determined after consultation that Menard and the third-party defendants disagree on a

significant issue. Even then, any separate questioning or briefing should be limited to the area of disagreement. The court will consider striking any motion or brief that is cumulative.

If any of the parties have other suggestions for special rules that should govern the proceedings, they may present those suggestions to the magistrate judge during the September 7 status conference.

## B. Third-party defendants' motions to dismiss

Two third-party defendants move to dismiss Menard's third-party claims against them. First, Soaring Technology Co. moves to dismiss Menard's third-party claim because Signify's infringement allegations against Menard are too conclusory. Second, American Lighting moves to dismiss Menard's third-party claim on the ground that it is subject to an arbitration clause. For the reasons explained below, the court will deny Soaring's motion and grant American Lighting's motion.

### 1. Soaring's motion to dismiss

Menard alleges that Soaring has a duty to indemnify Menard because Signify's complaint identifies as an accused product a lighting product with SKU number 349-1293, Soaring manufactures a product with SKU number 349-1293, and Soaring's contract with Menard requires Soaring to indemnify Menard for patent infringement related to that product.

Soaring contends that Menard has failed to state a claim for indemnification because *Signify*'s complaint doesn't provide fair notice of which products manufactured by Soaring violate which claims of which patents. But Soaring cites no authority supporting the view that a third-party defendant can challenge a third-party plaintiff's claim by challenging the

sufficiency of the original plaintiff's complaint.[2] And such a rule would make little sense because it would put the third-party plaintiff in the untenable position of defending its claim against the third-party defendant by defending the plaintiff's claim against the third-party plaintiff. Obviously, a third-party plaintiff has no interest in arguing that any of the original plaintiff's claims should proceed. So any challenge to Signify's allegations should have been directed at Signify, not Menard.[3] The court will deny Soaring's motion.

### 2. American Lighting's motion to dismiss

American Lighting moves to dismiss or stay Menard's claim against it on the ground that the claim falls within the scope of an arbitration clause in the two parties' agreement:

> Vendor agrees that it will first attempt to resolve any dispute by contacting Menard directly. If Menard and Vendor are unable to resolve the dispute by these means, Menard and Vendor agree to submit to final and binding arbitration. Problems, claims, or disputes subject to binding arbitration include, but are not limited to: non statutory claims such as contractual claims, quasi-contractual claims, tort claims, and any and all causes of action arising under international, federal, or state laws or common law. . . . This provision constitutes an express waiver of the right to court, jury, or administrative review.

---

[2] Soaring cites two cases, but neither is helpful. In *Erie Ins. Exchange v. Danby Products, Inc.*, No. 10-1271, 2011 WL 2470608, at *2 (W.D. Pa. June 21, 2011), the court dismissed a third-party plaintiff's claim against a third-party defendant because the third-party plaintiff's indemnification allegations were conclusory. In *Railey v. Southern Ry. Co.*, 31 F.R.D. 519, 523 (E.D.S.C. 1963), the court dismissed a third-party plaintiff's complaint against a third-party defendant because the third-party plaintiff alleged that the third-party defendant was liable to the original plaintiff rather than to the third-party defendant. Both cases were based on the allegations in third-party plaintiff's complaint, not those in the original plaintiff's complaint.

[3] Neither Menard nor Soaring address whether Soaring could have directly challenged Signify's claim against Menard as it relates to SKU number 349-1293. Rule 14(a)(2)(C) allows a third-party defendant to assert against the original plaintiff "any defense that the third-party plaintiff has to the plaintiff's claim." It isn't clear whether a failure to state a claim is a "defense" within the meaning of the rule. The court need not decide that issue because Soaring's motion was directed at Menard, not Signify, so Signify didn't respond to it.

Dkt. 117-1, at 5, ¶ 15. This clause is in the same contract as the clause requiring American Lighting to indemnify Menard.

To prevail on its motion, American Lighting must show three things: (1) a valid, written agreement to arbitrate exists; (2) Menard's third-party claim falls within the scope of that agreement; and (3) Menard refused to proceed to arbitration. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). Only the second element is in dispute.

Menard contends that the parties' arbitration agreement doesn't apply for two reasons: (1) American Lighting hasn't yet denied that it has a duty to indemnify Menard, so there is no dispute to arbitrate; and (2) the arbitration agreement applies only to claims brought by American Lighting, not Menard. Neither argument is persuasive.

As for Menard's first argument, it is true that American Lighting hasn't yet filed an answer, so there is no pleading in which American Lighting denies that it has a duty to indemnify Menard. But American Lighting wasn't required to file an answer and deny Menard's allegations before invoking the arbitration clause. In fact, litigating Menard's claim in this court could subject American Lighting to a defense that it had waived its right to arbitrate. *See Smith v. GC Services Limited Partnership*, 907 F.3d 495, 500 (7th Cir. 2018). Menard demonstrated that it had "a contractual claim" against American Lighting within the meaning of the arbitration clause by serving American Lighting with a third-party complaint that seeks to enforce an indemnity clause against American Lighting. Menard cannot initiate adversary proceedings to enforce its contract with American Lighting but then deny that there is a dispute to which the arbitration clause could apply. If Menard were correct that it doesn't have a dispute with American Lighting, it would necessarily follow that the court would have to dismiss Menard's indemnification claim against American Lighting for lack of jurisdiction.

8

*See Klinger v. Conan Doyle Estate, Ltd.*, 755 F.3d 496, 498–99 (7th Cir. 2014) ("Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies (terms that appear to be synonyms), which is to say to actual legal disputes.").

Menard's second argument is that the arbitration clause doesn't apply to claims that Menard brings against American Lighting. Menard cites the first sentence of the clause, which states that "Vendor [American Lighting] agrees that it will first attempt to resolve any dispute by contacting Menard directly." Menard reads that to mean that all the requirements about arbitration in the sentences that follow apply only to American Lighting's claims.

The sentence Menard cites may suggest that only American Lighting is required to seek an informal resolution before enforcing its rights. But that sentence doesn't address the scope of the requirement to arbitrate. Rather, that issue is covered by subsequent sentences, which state that "Menard and Vendor agree to submit to final and binding arbitration" for "contractual claims." The plain language of the agreement applies to both parties. The clause also states that it "constitutes an express waiver of the right to court, jury, or administrative review;" the clause doesn't limit the waiver to American Lighting.

*Douglas Stewart Company v. HiQo Solutions, Inc.*, No. 19-cv-714-jdp, 2020 WL 2333286 (W.D. Wis. May 11, 2020), is instructive. In that case, the plaintiff argued that a forum-selection clause applied only to claims brought by the defendant because the clause referred to what the defendant "acknowledges and agrees" rather than what both parties acknowledge and agree. The court rejected that argument because other portions of the clause made it clear that the clause applied to both parties. Specifically, the clause stated that "any" action must be brought in Georgia and that Georgia was the "exclusive" venue for the parties' disputes. *Id.* at 3. The clause at issue in this case is similar. Although the beginning of the arbitration clause

9

refers to what "Vendor" agrees, other provisions make it clear that both parties are agreeing to arbitration.

Even if the arbitration clause is ambiguous about whether it applies to both parties or American Lighting only, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration." *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). In other words, "a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* (internal quotation marks omitted). It is reasonable to construe the arbitration clause as applying to both parties, so the court must reject Menard's contention that the clause is one-sided. In fact, one-sided arbitration clauses may be unconscionable, *see Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 76, 290 Wis. 2d 514, 714 N.W.2d 155, which is another reason to reject Menard's interpretation. As American Lighting points out, Menard previously moved to enforce a virtually identical arbitration agreement against another party, *see Haier US Appliance Solutions, Inc. v. Menard, Inc.*, No. 16-cv-761, 2017 WL 1281154, at *2 (W.D. Ky. Apr. 4, 2017); Dkt. 117-2 (Menard's Brief in Haier); Dkt. 117-3 (the arbitration agreement at issue in Haier), so it would be inconsistent to contend now that the agreement is unenforceable.

Menard also contends that it would be more efficient to resolve its indemnity claim against American Lighting in this court rather than in arbitration. Regardless of whether that's true, it's irrelevant. If a valid arbitration clause applies to a dispute, this court must enforce that clause when a party invokes it. *See* 9 U.S.C. § 2 (an arbitration clause is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). Menard hasn't challenged the validity of the clause, and the court has concluded

10

that Menard's claim against American Lighting falls within scope of the clause. So if Menard wishes to enforce the indemnity clause, it will have to be in arbitration. The court doesn't have discretion to weigh the costs and benefits of resolving the claim in one forum over the other.

This court will grant American Lighting's motion and dismiss Menard's claim without prejudice, which is consistent with this court's general practice when all claims against a party must be decided in arbitration. *See, e.g., Rock Hemp Corp. v. Dunn*, 574 F. Supp. 3d 624, 633 (W.D. Wis. 2021). At the conclusion of the arbitration proceedings, either party may file a new lawsuit to confirm or challenge the arbitration decision.

## C. Signify's motions to dismiss third-party claims and defenses

Four of the third-party defendants—Richpower Industries, Best Lighting Products, Alert Reel Manufacturing, and Luminex International Company—seek declaratory relief against Signify for noninfringement and invalidity. Signify moves to dismiss all of these claims on multiple grounds. The court will group Signify's arguments into four categories: (1) jurisdiction over claims related to the accused products; (2) jurisdiction over claims related to non-accused products; (3) deficiencies in pleading the claims; and (4) challenges to the affirmative defenses.

### 1. Jurisdiction over claims related to accused products

Signify contends that the third-party defendants lack standing to obtain declaratory relief because Signify hasn't threatened to sue them or otherwise taken any affirmative acts against them. The general standard for determining whether a party has standing to seek a declaration for noninfringement or invalidity is whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

*MedImmune* leaves open many questions regarding what satisfies the standard. But the Court of Appeals for the Federal Circuit has rejected the view that a party lacks standing unless it was personally accused of infringement. *See Hewlett–Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009).

In this case, the court concludes that Richpower, Best Lighting, Alert Reel, and Luminex have standing to seek declaratory relief that: (1) any accused products they manufacture do not infringe; and (2) any patent claims asserted against those accused products are invalid. This conclusion is based on two factors. First, some of Signify's claims for infringement are based solely on allegations that Menard sold products manufactured by the third-party defendants. This implies that the third-party defendants have also directly infringed the patents-in-suit. Second, Menard alleges that the third-party defendants have indemnification agreements with Menard covering patent infringement claims based on products supplied to Menard by the third-party defendants. That creates a risk that the third-party defendants will be held liable if Menard is held liable, even if Signify never sues the third-party defendants.[4]

Federal Circuit law is clear that these two factors are enough to provide standing. As for the accusations of infringement against Menard, in *Arris Group, Inc. v. British Telecommunications PLC*, the court summarized prior case law as holding that a supplier has standing to sue when a patent holder accuses the supplier's customer of direct infringement in a manner suggesting that the supplier could be liable for indirect infringement. 639 F.3d 1368, 1375–76 (Fed. Cir. 2011). In *UCP International Company Limited v. Balsam Brands Inc.*, the court recognized that

---

[4] The third-party defendants also rely on other factors to show standing, such as Signify's licensing history and past cases against other parties. The court need not discuss those factors because the court concludes that the third-party defendants have standing for the other reasons cited.

the argument for standing is even stronger when the accusation of direct infringement against the customer is based on a system that the supplier manufacturers rather than a method because that implies that the supplier may be held liable for direct infringement. 787 Fed. Appx. 691, 699–700 (Fed. Cir. 2019).

As for the indemnification agreements, the court of appeals stated in *Microsoft Corp. v. DataTern, Inc.*, that suppliers have standing to sue when their customers are accused of infringement and the suppliers have "an obligation to indemnify their customers." 755 F.3d 899, 904 (Fed. Cir. 2014). And in *Jack Henry & Associates, Inc. v. Plano Encryption Technologies LLC*, the court stated that "[a]n indemnitor has standing to participate in an action that could determine its liability." 910 F.3d 1199, 1206–07 (Fed. Cir. 2018).

Signify contends that these cases don't help the third-party defendants, pointing to qualifying language in some of the cases. First, Signify cites the following statement in *Microsoft*: "To the extent that Appellees argue that they have a right to bring the declaratory judgment action solely because their customers have been sued for direct infringement, they are incorrect." 755 F.3d at 904. This statement shows that there is no categorical rule that allows a supplier to sue whenever a customer is sued. Rather, the important question is whether the accusation of infringement against the customer implies that the supplier also infringed. *Id.* That was the problem in *Microsoft*. Microsoft had sued the customer on method claims, but the supplier didn't explain how the supplier itself would be held liable for direct or indirect infringement. *Id.* In this case, there is no uncertainty. Signify is suing Menard under 35 U.S.C. § 271(a) for selling patented products that the third-party defendants manufacture. Making a patented product also qualifies as infringement as under § 271(a), so the infringement claims

against Signify necessarily imply that the third-party defendants have infringed the patents-in-suit as well.

Second, Signify cites statements in *Arris* and *Microsoft* that a supplier has standing when it is "obligated" to indemnify its customer. Signify says that three of the four third-party defendants at issue have denied that they have a duty to indemnify Menard, so the court can't determine at this point whether they are so obligated. But the court of appeals has rejected that argument: "[W]e have never held that the validity of an indemnity demand, i.e., the applicability of an indemnity agreement to the demander's circumstances, needs to be conceded to establish subject-matter jurisdiction." *Mitek Systems, Inc. v. United Services Automobile Association*, 34 F.4th 1334, 1346 (Fed. Cir. 2022). Rather, the question is whether there is a "reasonable potential" that the third-party defendants could be required to indemnify Menard. *Microsoft*, 755 F.3d at 905. That standard is met in this case.

Richpower admits that it has a duty to indemnify Menard, *see* Dkt. 91, ¶ 55, so Richpower has standing to sue even under Signify's view of the law. Luminex and Best Lighting have not conceded a duty to indemnify, but they admit in their answer that they have an agreement with Menard that includes language requiring them to "defend, indemnify, and hold Menard harmless from and against all claims, damages, and/or expense(s) on account of . . . any actual or alleged violation or infringement of . . . any patent . . . arising from Menard's use, sale or offering for sale of any goods covered by the purchase order and/or services provided by" the third-party defendants. Dkt. 146, ¶¶ 102–07 (Best Lighting); Dkt. 159, ¶ 29 (Luminex). That admission is enough to show a reasonable potential of liability.

Alert Reel's claim is not as clear cut as the others. It denies that it has an indemnification agreement with Menard. Dkt. 147, ¶ 89. But Alert Reel hasn't challenged the sufficiency of

Menard's allegation to the contrary, and Alert Reel hasn't otherwise sought dismissal of Menard's indemnity claim. Unless that claim is dismissed, there is a reasonable potential that Alert Reel could be required to indemnify Menard.

The court concludes that Richpower, Best Lighting, Alert Reel, and Luminex have standing to seek declaratory relief on claims related to the accused products that they manufacture.

In the event that the court concludes that the third-party defendants have standing, Signify asks the court to decline to exercise jurisdiction over the third-party defendants' claims for declaratory relief. *See Minnesota Min. and Mfg. Co. v. Norton Co.*, 929 F.2d 670, 672–73 (Fed Cir. 1991) (recognizing that courts have discretion to decline to exercise jurisdiction over claims for declaratory relief). But "[t]here must be well-founded reasons for declining to entertain a declaratory judgment action." *Ford Motor Co. v. U.S.*, 811 F.3d 1371, 1378 (Fed. Cir. 2016). In support of its request, Signify simply repeats the arguments that it made for granting its motion to sever and for concluding that the third-party defendants lack standing to sue. The court has already rejected those arguments, so the court won't decline to exercise jurisdiction over these claims.

## 2.  Jurisdiction over claims related to non-accused products

Signify contends that Richpower, Best Lighting, Alert Reel, and Luminex are seeking declaratory relief on products that Signify is not accusing of infringement. Signify asks the court to dismiss these claims on three grounds: (1) the third-party defendants don't have standing to bring them; (2) even if the third-party defendants have standing, the court should decline to exercise jurisdiction over those claims; and (3) the Federal Rules of Civil Procedure don't allow the claims.

As it relates to Best Lighting, Alert Reel, and Luminex, Signify's argument appears to be based on the third-party defendants' use of the term "Accused Products" in their claims for declaratory relief rather than the SKU numbers of specific accused products. The third-party defendants say that they used the more general term only because Signify's complaint states that the SKU numbers listed are "non-limiting examples" of accused products, leaving it unclear which products are accused. Dkt. 1, at 11. And each of those three third-party defendants confirm in their opposition briefs that they are not seeking declaratory relief on products that Signify isn't accusing or on any claims that Signify isn't asserting. Dkt. 175, at 14–16; Dkt. 165, at 33; Dkt. 164, at 37.

The court agrees with the third-party defendants that Signify created the confusion by using open-ended language in its complaint. To clarify, the court will not allow Signify to assert infringement claims for products that aren't disclosed in its complaint or infringement contentions. With that understanding, Best Lighting, Alert Reel, and Luminex have made it clear that they aren't seeking declaratory relief for other products. So the court will deny this part of Signify's motions as moot.

Richpower acknowledges that its request for a declaration of noninfringement isn't limited to the accused products; Richpower also wants declaratory relief on other products that have a "similar configuration." Dkt. 149, at 5. If this were a two-party suit between Signify and Richpower, Richpower might be entitled to a declaration of noninfringement for products that had not been directly accused, so long as it could show that it was in reasonable apprehension of suit over those products. But even if the court assumes that Richpower has standing to seek declaratory relief on non-accused products, the court would decline to exercise jurisdiction. It is fair to allow the third-party defendants to clarify their rights on the accused products, but it

would not be fair to the other parties in this case to expand what is already an expansive lawsuit to include issues that aren't directly implicated by Signify's complaint. The court will dismiss Richpower's claims that are based on anything other than the products directly accused in this case.

### 3. Alleged pleading deficiencies

Signify challenges the sufficiency of some of the third-party defendants' allegations of noninfringement and invalidity. First, Signify says that the claims for noninfringement don't identify the products for which the third-party defendants are seeking a declaration. But, as the court has already discussed, the products at issue in the claims for declarations of noninfringement will be limited to the same products that Signify is accusing of infringement.

Second, Signify says that Richpower and Luminex's noninfringement counterclaims don't satisfy Federal Rule of Civil Procedure 8 because they don't explain how the accused products lack one or more elements of an asserted claim. Similarly, Signify says that Alert Reel failed to either identify specific limitations that the accused products don't meet or explain how any limitation wasn't met. But it's Signify's burden to prove infringement, not the third-party defendants' obligation to disprove it. That doesn't change simply because third-party defendants are seeking declaratory relief. *Medtronic, Inc. v. Mirowski Family Ventures, LLC,* 571 U.S. 191, 199 (2014). For this reason, this court has previously held that "denying the allegation of infringement more or less inherently sets up a plausible counterclaim for non-infringement." *Nouis Technologies, Inc. v. Polaris Industries Inc.*, No. 14–cv–233–jdp, 2015 WL 3407862, at *2–3 (W.D. Wis. May 27, 2015). Beyond the pleading requirements, the court's procedures require the parties to promptly articulate their noninfringement positions in detail.

Signify contends that *Nouis* is no longer good law because it was decided before Federal Rule of Civil Procedure 84 and Form 18 were abrogated. Rule 84 stated that a pleading was sufficient if it was consistent with the Appendix of Forms. *See In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323, 1334 (Fed. Cir. 2012). Form 18 was an example of a complaint for patent infringement, and it provided only basic information about the nature of the claim. Signify points out that the court of appeals has held that Form 18 no longer provides the metric for determining the sufficiency of a claim for patent infringement. *See Lyda v. CBS Corporation*, 838 F.3d 1331, 1334 (Fed. Cir. 2016). These developments in the law don't undermine *Nouis* because the standard articulated in *Nouis* was based on the burden of proof on an infringement claim, not on Form 18. The court will deny Signify's motion to dismiss the noninfringement claims brought by the third-party defendants.

Third, Signify says that Richpower's invalidity claim for Claims 2–15 of U.S. Patent No. 7,348,604 is deficient. Specifically, Richpower alleges generally that the "claims" of the '604 patent are invalid, but the allegations explaining the basis for the invalidity claim relate to Claim 1 only. *See* Dkt. 91, at 51. And because Claims 2–15 are dependent claims, they may be valid even if Claim 1 is invalid. *See* 35 U.S.C. § 282(a). Richpower has the burden to prove invalidity, so "[a]n adequately pleaded counterclaim of invalidity requires more supporting facts" than a claim for noninfringement. *Nouis Technologies*, 2015 WL 3407862, at *3. By failing to identify any basis for invalidating Claims 2–15, Richpower has failed to state a claim for invalidity, so the court will dismiss those claims.

Richpower asks for an opportunity to replead those claims, and the court will grant that request. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). Richpower is free to file a motion for leave to amend under Rule 15 if it

18

obtains more information supporting its challenge to Claims 2–15 of the '604 patent. The court expects to Richpower to act promptly, both to obtain the information it needs to support a claim and to move for leave to amend its pleading if and when it obtains that information. The court will not adjust the schedule for an untimely Rule 15 motion. The court also expects Signify to promptly cooperate with any discovery requests based on this issue and to stipulate to any timely motion for leave to amend.

### 4.   Affirmative defenses

Under Rule 14(a)(2)(C), a third-party defendant "may assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claim." Signify challenges some of the third-party defendants' affirmative defenses against Signify on multiple grounds.

First, Signify contends that it is unclear whether some defenses based on noninfringement extend beyond the accused products and the asserted claims. No third-party defendant is contending that it may assert a defense to a claim that Signify isn't bringing, so the court will construe the defenses as being limited to Signify's asserted claims and accused products.

Second, Signify contends that some of the defenses asserted against Signify appear to be asserted on the third-party defendants' own behalf, rather than on behalf of Menard, as required by Rule 14(a)(2)(C). This is a semantic argument. It is clear from context that the defenses at issue are defenses against Signify's claims against Menard. The court will not strike a defense simply because a third-party defendant failed to specify that a defense was one that Menard could have raised itself.

Third, Signify contends that some affirmative defenses aren't adequately supported. Specifically, Signify points to the non-willfulness defense asserted by Luminex; the estoppel

defense asserted by Alert Reel, Luminex, and Best Lighting; and the defenses for laches, acquiescence and waiver, unclean hands, patent exhaustion, collateral estoppel, and first sale asserted by Alert Reel and Best Lighting.

Willfulness isn't a defense; it is something Signify must prove as a prerequisite for obtaining enhanced damages. *See SRI International, Inc. v. Cisco Systems, Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1368 (Fed. Cir. 2006). So it isn't something that third-party defendants needed to or should have pleaded as an affirmative defense. But striking this defense doesn't bar Luminex from arguing later in the case that it didn't act willfully.

Estoppel, laches, acquiescence and waiver, unclean hands, patent exhaustion, collateral estoppel, and first sale are affirmative defenses, and Signify is correct that Alert Reel, Luminex, and Best Lighting don't identify any factual basis for these defenses in their pleadings. An affirmative defense must be more than "conclusory allegations" and "restatement[s]" of the defense. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1295 (7th Cir. 1989). That's all the third-party defendants have provided, so the court will strike those defenses. If the third-party defendants obtain information supporting the defenses, they may file a motion for leave to amend their pleading under Rule 15. Again, the third-party defendants are forewarned they should do so immediately once the basis for the defense is discovered.

ORDER

IT IS ORDERED that:

1. The motion to sever filed by plaintiffs Signify North America Corporation and Signify Holding B.V., Dkt. 100, is DENIED.

2. Soaring Technology, Co.'s motion to dismiss Menard's third-party claims, Dkt. 104, is DENIED.

3. American Lighting, Inc.'s motion to dismiss Menard's third-party claims, Dkt. 115, is GRANTED. American Lighting is DISMISSED without prejudice so that the parties may resolve the claim in arbitration.

4. Signify's motion to dismiss Richpower Industries, Inc.'s claims and affirmative defenses, Dkt, 129, is GRANTED in part and DENIED in part. The motion is GRANTED as to any claims for noninfringement based on products that Signify isn't accusing of infringement and as to Richpower's invalidity claim against Claims 2–15 of the '604 patent. Those claims are DISMISSED without prejudice. The motion is DENIED in all other respects.

5. Signify's motion to dismiss Best Lighting Products, Inc.'s claims and strike its affirmative defenses, Dkt. 154, is DENIED as to Best Lighting's claims. The motion to strike Best Lighting's affirmative defenses is GRANTED as to the defenses for estoppel, laches, acquiescence and waiver, unclean hands, patent exhaustion, collateral estoppel, and first sale. Those defenses are STRUCK without prejudice to Best Lighting amending its pleading in accordance with Rule 15 to correct the defects. The motion to strike is otherwise DENIED.

6. Signify's motion to dismiss Alert Reel Manufacturing, LLC's claims and strike its affirmative defenses, Dkt. 155, is DENIED as to Alert Reel's claims. The motion to strike Alert Reel's affirmative defenses is GRANTED as to the defenses for estoppel, laches, acquiescence and waiver, unclean hands, patent exhaustion, collateral estoppel, and first sale. Those defenses are STRUCK without prejudice to Alert Reel amending its pleading in accordance with Rule 15 to correct the defects. The motion to strike is otherwise DENIED.

7. Signify's motion to dismiss Luminex International Company's claims and strike their affirmative defenses, Dkt. 163, is DENIED as to the motion to dismiss Luminex's claims. The motion to strike Luminex's affirmative defenses is GRANTED as to the defenses for estoppel and non-willfulness. The motion to strike is otherwise DENIED.

Entered August 31, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

21